IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL WOOD
and SUMMER WOOD,

                Plaintiffs,

      v.

NATIONSTAR MORTGAGE, LLC, and
OCWEN LOAN SERVICING, LLC

                Defendants.

Case No. 6:16-cv-02061-MC
OPINION AND ORDER

MCSHANE, Judge:

For the reasons that follow, defendant Ocwen's motion, ECF No. 13, is DENIED;

defendant Nationstar's request for judicial notice, ECF No. 15, is GRANTED; and Nationstar's

motion to dismiss, ECF No. 14, is GRANTED in part and DENIED in part.

# BACKGROUND[1]

This case arises from facts surrounding the servicing of a home mortgage. Michael and Summer Wood ("Plaintiffs") purchased their home in Salem, Oregon on November 14, 2011 and their loan was serviced by defendant Ocwen. As of October 7, 2013, Ocwen informed Plaintiffs that their monthly mortgage payment would be $1,190.31. SAC ¶10. Plaintiffs made each of their monthly payments of $1,190.31 via automatic withdrawal from that date until Ocwen transferred the loan to Nationstar on or around November 6, 2015. SAC ¶10.

Plaintiffs requested a full loan history from Ocwen. On November 24, 2015, Plaintiffs received a partial loan history that dated back to November 3, 2014. SAC ¶9. In reviewing the partial loan history, Plaintiffs learned that on or around November 3, 2014, Ocwen had increased the Plaintiffs monthly payment to $1,206.16. SAC ¶12. Plaintiffs claim that Ocwen never informed them that their payments had increased from $1,190.31; an amount that Plaintiffs had consistently been paying. SAC ¶12. As of November 3, 2014, Plaintiffs were current on their mortgage payment but OWEN reported a three-month delinquency to credit reporting agencies. SAC ¶13.

Plaintiffs allege numerous accounting irregularities by Ocwen that appear, without more, to defy explanation. For instance, on November 3, 2014, Ocwen misapplied two payments of $1,206.16, two escrow payments of $372.52, two suspense payments of $833.64 "as well as other miscellaneous payments." SAC ¶12. Ocwen's accounting shows that on November 3, 2014, the balance of the suspense account ranged from a high of $8,169.74 to a low of $464.96. SAC ¶14. Despite the last entry in November 2014 showing the balance at $464.96, the

---

[1] The Court takes all relevant facts in this opinion from the allegations in the Second Amended Complaint (SAC) and the letter upon which the complaint necessarily relies (ECF No. 8-1 Exh. 3), as discussed below.

beginning balance in December was $8,558.11. SAC ¶14. Plaintiffs made their payment of $1,190.31 for December, and the balance on the account that month ranged from a high of $9,691.78 to a low of $837.47. SAC ¶16. Ocwen then claimed that the mortgage was 120 days in arrears and reported this to credit reporting agencies. SAC ¶17. This process repeated until the balance on the account was as high as $22,376.69. SAC ¶18. Again, throughout this time period, Plaintiffs were timely making either automated or direct payments consistent with the amount outlined in the loan agreement.

Plaintiffs state that on July 2, 2015, Ocwen "reversed 16 payments totaling approximately $19,204.50," and that this amount was not applied to any account associated with the mortgage. SAC ¶20. Plaintiffs allege that Ocwen kept this money for its own benefit and reported plaintiffs were 15 months delinquent on their mortgage. SAC ¶20. Plaintiffs say that Ocwen charged a "legal filing service fee" of $15.59. SAC ¶21. They also allege that Ocwen charged and collected late fees despite Plaintiffs never having been late on their payments. SAC ¶19. Plaintiffs further claim that Ocwen kept for their own benefit at least seven months of payments in an amount not less than $8,332. SAC ¶25.

Plaintiffs realized in October 2015 that their monthly payment had not been automatically withdrawn from their account as usual. Ms. Wood sent a letter dated October 14, 2015, expressing frustration at Ocwen's services. The letter identifies the borrower and states that Ms. Wood called Ocwen's customer service department to find out why October's payment was not withdrawn from her account. ECF No. 8-1 Exh. 3. She was informed at this point that Ocwen had no record of payments being made for July, August, or September, so the automatic withdrawal was canceled. *Id.* She disputed this accounting and stated she was attaching bank records showing payments of $1,190.31 for each of those months. *Id.* It was only upon receiving

3 – OPINION AND ORDER

a partial loan summary in response to this letter that Plaintiffs were able to piece together the facts alleged in the SAC, as described above.

The mortgage was transferred to Nationstar in November 2015. SAC ¶23. At the time of the transfer, Ocwen claimed that Plaintiffs were seven months delinquent, despite Plaintiffs having made all payments. SAC ¶24. Nationstar has claimed that the mortgage is delinquent and has reported such to consumer credit reporting agencies, despite Plaintiffs making their monthly payments of $1,190.31 each month. SAC ¶27. Nationstar has assessed and collected late fees associated with the loan. SAC ¶30.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

I.    <u>Fair Debt Collection Practices Act</u>

Plaintiffs allege that Nationstar violated the Federal Debt Collection Practices Act

(FDCPA). Nationstar reported Plaintiffs' debt as delinquent to credit reporting agencies and have

assessed late fees of $40.89, despite Plaintiffs' assertion that they are current on the payments.

Nationstar argues that Plaintiffs' FDCPA claim is insufficiently pled because the SAC

does not allege that the loan was "in default." Under 15 U.S.C. 1692a(6), a mortgage loan must

be in default for Nationstar to be considered a debt collector.

Plaintiffs have alleged that the mortgage was improperly reported as "delinquent," but the

9th Circuit has drawn a distinction between loans being in default and merely delinquent. *De*

*Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1075 (9th Cir. 2011). According to the

FDCPA's legislative history, "debt collector" does not include "mortgage service companies and

others who service outstanding debts for others, *so long as the debts were not in default when*

*taken for servicing*." S. REP. 95-382, 3-4 (1977) (emphasis added); §1692a(6)(F) ("the term

[debt collector] does not include--... (F) any person collecting... a debt... to the extent such

activity... (iii) concerns a debt which was not in default at the time it was obtained by such

person...."). The FDCPA does not define "in default," and courts interpreting §1692a(6)(f)(iii)

must look to the underlying contract and applicable state law. *De Dios v. Int'l Realty &*

*Investments*, 641 F.3d 1071, 1075 (9th Cir. 2011).

Nationstar requests the Court to take judicial notice of the Note and Deed of Trust ("the

Note") for the mortgage at issue. The Note was attached by Ocwen to a claim in Plaintiffs' prior

bankruptcy filing—United States Bankruptcy Court, District of Oregon Case No. 13-62257.

Filings in bankruptcy court are judicially noticeable matters of public record. *See Copelan v.*

5 – OPINION AND ORDER

*Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1234 (S.D. Cal. 2015). The Court grants Nationstar's request for judicial notice of the Note and reviews it to determine whether the loan was in default at the time it was obtained such that Nationstar would be a debt collector under the FDCPA.

Page two of the Note under subsection 6(B) entitled "Default" reads: "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default." The following subsections state if the borrower is in default, the Note holder may send a written notice accelerating the due date of the full principal of the loan. The Note also makes it clear that the creditor does not waive their rights to accelerate at a later time even if they choose not to accelerate the Note immediately. Either way, the borrower remains in default. The fact that the contract gives the Note holder discretion to act on the default (by giving notice or accelerating the loan) does not change the fact that the language of the contract creates a default upon the borrower's failure to pay the monthly sum in full.

Nationstar is bound by the language of the note. They cannot argue that for purposes of the note the Plaintiffs are in default, but for purposes of the FDCPA the Plaintiffs were merely delinquent. The language of the Note, drafted in favor of the creditor, makes it clear that, even though Ocwen did not exercise its right to accelerate the loan, the borrower was in fact in default from the moment Ocwen claims it did not receive full payment. Plaintiffs allege that Ocwen's loan history indicates that the payments were applied as though the payment was $1,206.16 on November 3, 2014. Because Plaintiffs only paid $1,190.31 for all months relevant here, Plaintiffs were considered by Defendants to be in default under the terms of the Note no later than November 3, 2014. Nationstar therefore obtained the Note after it was in default and is a debt collector for purposes of the FDCPA.

6 – OPINION AND ORDER

Nationstar argues further that Plaintiffs have insufficiently alleged facts to support a claim that Nationstar violated any provision of 15 USC § 1692(e) (relating to false or misleading representations) or §1692(f) (prohibiting the collection of any amount unless such amount is expressly authorized by the agreement or law). In the SAC, Plaintiffs allege that they communicated to Nationstar that they disputed the delinquency of the payments. If the only facts before this Court were that Nationstar acted as though the debt was delinquent and that the Plaintiffs disputed that fact, the Court might agree with Nationstar. However, the odd circumstances surrounding the transfer from Ocwen to Nationstar immediately after Plaintiffs' discovery that they were $16 short on their mortgage payments for more than a year—along with Plaintiffs' allegations supported by a letter that they were actively attempting to correct the errors with their mortgage—amount to sufficient facts to allow this case to continue to discovery. The Court finds that Plaintiffs have stated a plausible claim for relief under the FDCPA.

II.     Real Estate Settlement Practices Act Violation

The Real Estate Settlement Practices Act ("RESPA") requires that mortgage loan servicers, among other things, respond to qualified written requests ("QWRs") by borrowers for information relating to the servicing of such a loan. 12 USC §2605. Plaintiffs sent a letter to Ocwen in October 2015 disputing Ocwen's accounting, and Ocwen has attached that letter.

Typically, courts consider only the contents of the complaint when deciding a motion under FRCP 12(b)(6). However, courts can consider evidence on which the complaint "necessarily relies" if 1) the complaint refers to the document; 2) the document is central to the plaintiff's claim; and 3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The SAC refers specifically to Plaintiffs' letter disputing Ocwen's accounting dated Oct. 14, 2015. The document is central to Plaintiffs' RESPA claim. SAC ¶37. The Court therefore considers the letter in making its decision. Ocwen also attached a letter putatively sent in response to Plaintiffs' letter. This letter is not referenced in the SAC and is not central to plaintiffs' RESPA claim. For those reasons, the SAC does not "necessarily rely" on the response letter and the Court does not consider it for purposes of this motion to dismiss.

A QWR is defined as a written correspondence that 1) enables the servicer to identify the borrower and 2) includes a statement of the reasons for the borrower's belief that the account is in error or otherwise provides sufficient detail to the servicer regarding other information sought by the borrower. 12 USC §2605(e)(1)(B). The 9th Circuit has found that the definition of QWR should be interpreted broadly and does not require any "magic" words. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). "To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus trigger the servicer's obligations to respond." *Id.* The letter sent by Ms. Wood clearly identifies the borrowers and their account number. ECF No. 8-1. The letter states that Ms. Wood called Ocwen after learning that her mortgage payment for October 2015 was not withdrawn from her bank account per the automatic withdrawal system. *Id.* Upon further inquiry, she discovered that Ocwen had no records of the payments being made for July, August, or September. She stated that this was a mistake, and said she was attaching bank records showing that the funds were withdrawn from her account for each those months. The contents of this letter did not, as Ocwen argues, "merely complain[]" about the October payment not being

processed, but in fact "generally dispute[d] Ocwen's accounting." ECF No. 13. The contents of this letter, as described above, satisfy the definition of a QWR.

The Court must consider whether Ocwen plausibly violated the requirements of §2605 based on the allegations of the SAC. The SAC alleges that Ocwen responded to Plaintiff's QWR on or about November 24, 2015, with a loan history that did not address the errors Plaintiffs listed. These facts state a plausible claim for a violation of §2605(k)(1)(C), requiring a servicer to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, etc. The SAC also alleges that Ocwen reported Plaintiffs' supposed delinquency to credit reporting agencies on November 1, 2015. This plausibly states a violation of §2605(e)(3), prohibiting reporting delinquencies to consumer reporting agencies within 60 days of receiving a QWR "relating to a dispute regarding the borrowers payments."

Servicers can also violate RESPA by failing to comply with any other regulations set forth by the Consumer Financial Protection Bureau. 12 U.S.C. §2605(k)(1)(E). The SAC plausibly alleges that Ocwen violated 12 CFR § 1024.17, a provision limiting the amounts held in escrow accounts. While there may be other potential provisions Plaintiffs may rely on, the Court finds that they have plausibly stated that Ocwen violated §2605 as described above. *Twombly*, 550 U.S. at 570.

Not all violations of §2605 result in recovery for borrowers. Recovery under §2605 is governed by subsection (f), which reads as follows:

> **(f) Damages and costs**
> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> > **(1) Individuals**
> > In the case of any action by an individual, an amount equal to the sum of--
> > > **(A)** any actual damages to the borrower as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

**(2) Class Actions**....

**(3) Costs**

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

There are two contradicting interpretations of this statute with respect to whether a plaintiff must show actual damages before they may recover. While the issue has not been considered by the 9th Circuit, many courts have held that in order to recover any other statutory damages under §2605(f), a borrower must first show "actual damages" under (f)(1)(A). *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, No. CV-11-156-HZ, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011); *Schwartz v. Christiana Trust*, 2016 U.S. Dist. LEXIS 83186, *14 (D. Or. June 2, 2016).

A reading of the plain language of the statute does not support this interpretation. The statute allows for damages equal to the *sum* of 1) actual damages and 2) additional damages up to $2000 in the case of a pattern or practice of noncompliance. 12 U.S.C. §2605(f)(1). The statute does not make actual damages a prerequisite for the recovery of additional damages.

Plaintiffs have alleged facts sufficient to state a plausible claim under either §2605(f)(1)(A) or §2605(f)(1)(B). Plaintiffs allege "actual damages" in the form of late fees which were assessed by the transferee, Nationstar, based upon Ocwen's alleged accounting errors. Plaintiffs have alleged a pattern or practice of noncompliance by pleading facts that Ocwen: 1) held an inappropriately high sum of money in Plaintiffs' escrow account; 2) failed to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, etc.; and 3) reported a delinquency to a credit agency within 60 days of receiving a

10 – OPINION AND ORDER

QWR contesting that delinquency. While Ocwen may dispute facts alleged in the SAC, taken together with the QWR, it plausibly states a case that Ocwen violated RESPA.

   III.   Unfair Trade Practices Act

Plaintiffs allege that both defendants violated the Unfair Trade Practices Act (UTPA), by misapplying funds and charging unauthorized fees. ORS 646.608. Both defendants argue that the claims are barred by statute of limitations.

UTPA claims must be brought within one year of discovery of the violation. ORS 646.638(6). This action was filed on October 27, 2016, so all claims discovered before October 27, 2015 are barred.

Nationstar argues that the claim against itself is barred because the SAC alleges that Nationstar assessed late fees for the months "May 2015 through October 2013." SAC ¶30. Because Nationstar did not begin servicing the loan until November 2015, the Court accepts Plaintiffs concession that this is clearly a typographical error. As stated in Plaintiffs' response, the appropriate dates should read "May 2015 through October 2016." The Court rejects Nationstar's statute of limitations argument. This matter should have been more appropriately resolved through conferral.

Ocwen argues that all of the UTPA claims against itself necessarily accrued before October 27, 2015. As stated above, the relevant accrual period is one year from plaintiffs' discovery of the claim. Plaintiffs allege that they did not to know of the accounting issues until Ocwen sent a partial loan history on or about November 24, 2015. SAC ¶37. More facts may emerge through discovery to establish that Plaintiffs knew of alleged violations before October 27, 2015, but the face of the complaint does not support Ocwen's argument.

11 – OPINION AND ORDER

Defendants also argue that Plaintiffs have failed to plead any ascertainable loss resulting from a willful violation of the statute. The UTPA allows for a private right of action only if a party has an ascertainable loss of money or property resulting from a willful violation of the statute. ORS 646.638(1); *Scott v. W. Intern. Surplus, Inc.*, 267 Ore. 512, 515 (1973). An "ascertainable loss" requires allegations of an actual payment of money that is causally linked to defendants' actions. *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 978 (D. Or. 2016) (denying UTPA claim where plaintiffs failed to allege "that they paid the allegedly improper fees and costs").

Despite defendants' claim that Plaintiffs failed to allege ascertainable loss, the SAC clearly alleges that both Ocwen and Nationstar improperly charged and collected late fees from Plaintiffs and kept the fees for their own benefit. SAC¶ 19, 30. The payments Plaintiffs made to the loan servicers were not applied to the principal or interest of the loan, but placed in a suspense account from which late fees were charged and drawn. This is sufficient to constitute ascertainable damages under the UTPA. A "willful violation" is defined in the definition section of the UTPA as occurring "when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Plaintiffs allege that they have repeatedly disputed the accounting with the defendants. If Plaintiffs informed Defendants that the late fees were improperly charged, which we assume to be true for purposes of a motion to dismiss, then Defendants should have known that charging late fees was unlawful under the UTPA. *State ex rel. Redden v. Disc. Fabrics, Inc.*, 289 Or. 375, 385 (1980) ("Conduct which is 'wil[l]ful' and in violation of the Unlawful Trade Practices Act requires no more than proof of ordinary negligence by a defendant in not knowing, when it should have known, that a representation made by him was not true.").

12 – OPINION AND ORDER

Finally, Defendants argue that Plaintiffs have not alleged any facts to demonstrate that Defendants violated the specific sections of the UTPA cited in the SAC. A mortgage loan servicer can violate ORS § 646.608(1)(u) of the UTPA by failing to comply with OAR 137-020-0805 (establishing unfair and deceptive acts in mortgage loan servicing). 646.608(1)(u); *See* ORS 646.608(4) (prohibiting an action under subsection (1)(u) unless the Attorney General has first established a rule declaring the conduct to be unfair or deceptive). Failing to comply with RESPA constitutes a violation under OAR 137-020-0805(5). As detailed above, Plaintiffs have stated a claim against Ocwen under RESPA, and therefore have also stated a claim against Ocwen under the UTPA. It is also a violation under that same OAR to "assess[] a late fee or delinquency charge for a full payment made on or before the payment's due date or within the grace period applicable for the payment." OAR 137-020-0805. The SAC clearly states that "Nationstar assessed $40.89 late fee charges" despite the fact that "plaintiffs have made all payments that have come due on time." SAC ¶ 30, 25. The Court assumes that a payment being made "on time" means "on or before the payment's due date or within the grace period." Based on the foregoing, Plaintiffs have alleged sufficient facts to state claims against both defendants under the UTPA.

IV.    Defamation

Plaintiffs allege defamation claims against both defendants based on the statements made to credit reporting agencies regarding the delinquency of the debt despite being informed that the payments were current. Defendants' motions to dismiss raise several arguments against these claims.

1. Preemption Under 15 U.S.C. §1681h(e) and 15 U.S.C. §1681t(b)(1)(F)

Defendants argue that state law defamation actions are preempted by the FCRA under one of two preemption statutes. The interaction between these two statutes has been the basis of much judicial consternation. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166 (9th Cir. 2009) (Recognizing that "[a]ttempting to reconcile the two sections has left district courts in disarray," but ultimately reaching a decision on other grounds).

The first statute states that "no consumer may bring any action or proceeding in the nature of defamation... with respect to the reporting of information against... any person who furnishes information to a consumer reporting agency... except as to false information furnished with malice or willful intent to injure such consumer." §1681h(e). This seems to allow state law actions for defamation as long as the plaintiff can show falsity and malice. *Gorman*, 584 F.3d at 1166.

The second statute, §1681t, addresses more generally the FCRA's relation to state laws. It provides that no requirement or prohibition may be imposed with respect to any subject matter regulated under, among other sections, §1691s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies. §1681t(b)(1)(F). The section provides an exception to this rule for actions under two specific statutes under California and Massachusetts law. This statute can be read to preempt all state law claims based on a creditor's actions in furnishing information to credit reporting agencies. The analysis for courts has become this: 1) are state law claims preempted by §1681t(b)(1)(F); and, if not, 2) does the claim fall within the exception of §1681h(e) by alleging that the information was false and furnished with malice?

The majority view is that the second, later-passed statute effectively repeals the first, resulting in preemption of state statutory and common law actions. This is known as the "total

preemption" approach. *See, e.g., Cope v. MBNA Am. Bank, NA*, 2006 WL 655742 at \*9 (D.Or. Mar. 8, 2006) (Judge Brown adopting total preemption approach). The recent trend in this district, however, has been toward what is called the "statutory approach." *Weseman v. Wells Fargo Home Mortg., Inc*, 2008 WL 542961, at \*3 (D. Or. Feb. 22, 2008) (Judge Mosman adopting the statutory approach); *Blair v. Bank of America, N.A.* 2012, WL 860411 at \*6 (Judge Simon adopting Judge Mosman's reasoning in *Weseman*) (D.Or. 2012). Under the statutory approach, §1681t(b)(1)(F) preempts only state law claims against credit information furnishers brought under state *statutes* while §1681h(e) preempts state *common law* claims.

This Court finds the statutory approach to be more legally sound. While the total preemption approach gives full fidelity to the language of §1681t(b)(1)(F), it ignores important legal principles and context by rendering §1681h(e) superfluous. As pointed out in *Weseman*, the total preemption approach "violates a canon of statutory construction by allowing a general statute to trump a specific statute." *Weseman*, 2008 WL 542961, at \*4. If congress had intended to repeal §1681h(e), they could have done so directly. "A cardinal rule of statutory construction is that a repeal by implication is disfavored." *Donaldson v. United States*, 653 F.2d 414, 418 (9th Cir. 1981); *Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424 (E.D. Pa. 2006) (adopting the statutory approach). It is also compelling that Congress explicitly excluded a Massachusetts and a California statutory provision from preemption under §1681t(b)(1)(F), indicating that it intended §1681t(b)(1)(F) to preempt only statutory claims. *Manno*, 439 F.Supp. at 425.

2. Malice or Willful Intent to Injure

The Court must now consider whether the Plaintiffs have alleged that defendants furnished false information "with malice or willful intent to injure" sufficient to avoid preemption under §1681h(e). Plaintiffs' pleadings plainly allege the falsity of the statements

15 – OPINION AND ORDER

provided to the credit reporting agencies. Malice under the FCRA requires the publication to be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Gorman,* 584 F.3d at 1168. As to Ocwen, the QWR from Ms. Wood demonstrates that Plaintiffs repeatedly contacted the loan servicer and attempted to correct the extensive accounting errors. Despite having actual knowledge of the error based on those exchanges, and despite a RESPA provision prohibiting them from doing so, Ocwen contacted credit reporting agencies and reported a delinquency. SAC ¶24. Plaintiffs have alleged sufficient facts to show that Ocwen had knowledge that the statements it made to credit reporting agencies were false.

The facts alleged against Nationstar, however, are insufficient to show malice. The only allegations are that Nationstar claimed that Plaintiffs were delinquent despite Plaintiffs disputing that fact. Disputes over mortgages happen daily. Absent allegations of further willful behavior or knowledge by Nationstar, Plaintiffs' defamation claim against it fails.

### 3. The Elements of a Defamation Claim Under Oregon Law

To state a claim for defamation under Oregon law a plaintiff must show 1) the making of a defamatory statement; 2) publication of the defamatory material; and 3) a resulting special harm or that the statement was defamatory *per se. Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp.,* 220 Or App 560, 584 (2008). Ocwen argues that Plaintiffs have failed to meet the third element by showing a special harm. However, no proof of special harm is required for libel, which is actionable *per se* in Oregon. *Hinkle v. Alexander*, 244 OR 271, 277 (1966). Ocwen's motion to dismiss the defamation claim is denied.

### V. Conversion

Under Oregon law, conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another that the actor may justly be

16 – OPINION AND ORDER

required to pay the full value of the chattel. *Mustola v. Toddy*, 253 Or. 658, 663 (1969). "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 86 Or. App. 406, 409 (1987). Plaintiffs have alleged that Ocwen kept money from the suspense account for its own benefit. SAC ¶20, 25. Plaintiffs allege somewhat inconsistent facts regarding the amounts converted, alleging that Ocwen kept $19,204.50 in ¶20 and "no less than $8332.00" in ¶25. Regardless, the crux of Plaintiffs' argument is that their monthly payments were placed into a suspense account and then funds began disappearing without being forwarded to Fannie Mae, the holder of the note. The claim is supported by specific allegations, if not by a full picture of the funds' movements.

Defendant Ocwen argues that it cannot be liable for conversion because conversion of money requires allegations that the money was either wrongfully received or that defendant is obligated to return specific money to plaintiffs. *Waggoner v. Haralampus*, 277 Or. 601, 604 (1977). The *Waggoner* court found that earnest money deposited in escrow by a defendant after plaintiff agreed that it was alright to disburse those funds could not be the basis for a conversion claim. *Id.* at 605. The *Waggoner* court contrasted those facts with another case finding that a claim for conversion existed where a defendant broker violated the trust imposed by the earnest money agreement and, without authority from the plaintiff, converted escrow funds for his own use. *Huszar v. Certified Realty Co.*, 272 Or. 517, 519 (1975). The facts of this case are more similar to *Huszar* than *Waggoner* because Plaintiffs allege that, while Ocwen lawfully obtained the funds, it kept those funds for its own use contrary to law or contract and without Plaintiffs' knowledge. This is sufficient to state a claim for conversion against Ocwen.

The pleadings for the claim for conversion against Nationstar are inadequate. The only money allegedly converted was late fees charged under the Note. While Plaintiff may dispute the delinquency, this is fundamentally a contractual issue and not a conversion claim.

## CONCLUSION

For the above reasons, defendant Ocwen's motion to dismiss, ECF No. 13, is DENIED. Defendant Nationstar's request for judicial notice (ECF #15) is GRANTED. Nationstar's motion to dismiss is GRANTED in part and claims four and five (for defamation and conversion) are dismissed with leave for Plaintiff to amend upon further discovery. Nationstar's motion to dismiss is DENIED as to claims one and three.

IT IS SO ORDERED.

DATED this __14__ th day of August, 2017.

_____
Michael McShane
United States District Judge