UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

MICHAEL WOOD and SUMMER WOOD,                              6:16-cv-2061-JR

                 Plaintiffs,

                                                                                              ORDER

             v.

NATIONSTAR MORTGAGE, LLC., and
OCWEN LOAN SERVICING, LLC.,

                              Defendants.

RUSSO, Magistrate Judge:

       On May 22, 2018, the court ordered plaintiffs, due to repeated case delays and discovery failures, to show cause why a sanction of dismissal or a sanction prohibiting introduction of certain evidence should not be entered (doc. 54). The court also requested the parties submit all discovery provided by plaintiffs to date for in camera review.

       The court has reviewed the in camera documents and plaintiffs' response to the order to show case as well as defendant Ocwen's response to the assertions raised by plaintiffs. Defendant Ocwen demonstrates that plaintiffs' responses to the interrogatories at issue are still inadequate.

Page 1 - ORDER

In essence, plaintiffs rely on their assertion that their mortgage loan is current and thus argue any information defendants seek regarding alleged misapplied payments, attempts to collect improper payments, late fees, etc. is "self-evident." Plaintiffs fail to provide sufficient records showing they made all payments on time. For example, such documents as canceled checks or statements from their own financial institution demonstrating payments made on the loan and when those payments were made along with the corresponding monthly mortgage statements validating the receipt of the payments. For instance, in response to the following interrogatory:

> Interrogatory No. 3 to Mr. Woods: If YOU contend that any of the payments made by YOU or on YOUR behalf on the LOAN were misapplied in any way by DEFENDANT or any other PERSON, IDENTIFY each misapplied payment by specifying the date and the amount of the misapplied payment and state all facts ... on which YOU rely to support YOUR contention that the payment was misapplied and IDENTIFY all witnesses or PERSONS with knowledge of facts supporting YOUR contention.

Plaintiffs responded:

> Notwithstanding plaintiffs' objections, plaintiffs and defendants have knowledge of the facts in this case. Plaintiffs further refer defendant to plaintiffs' response to defendants Request for Production of Documents, specifically Folders A, C, E, F, and G.

In their response to the order to show cause, plaintiffs state:

> Ocwen acknowledges that it received the loan history created by plaintiffs showing that plaintiffs are current and loan history provided by Ocwen showing how Ocwen attempted to apply the payments. However, it is dissatisfied with the fact that plaintiffs are not pointing to a specific misapplied payment or a specific sum.
> This amount is unknowable given that Ocwen has failed to account for the plaintiffs' payments properly. Plaintiffs cannot tell from the date that Ocwen began reversing payments what Ocwen did with the money that it received while it serviced the loan.
> This is not peculiar to the plaintiffs' loan. Indeed, according to the Consumer Financial Protection Bureau Ocwen's own head of servicing indicated "the BK escrow balance bucket is wrong and requires every BK loan to be manually reviewed and we can still have errors." See WOOD000307.

> The head of servicing has also stated "I've stressed importance of getting the BK escrow balance issues fixed, but no confirmation of root cause or target correction date . . . . It's a system issue because a bucket that determines the amount of money that a customer sends for their monthly payment can change with no record of why on the system . . . . Please help get the importance across on this issue. If this is not fixed, I cannot recommend that we move to analyze BK for the portfolio. Even with a control report to catch them, there is still risk the balance will be wrong when you actually analyze the account." Id.
>
> Indeed, what is clear is that Ocwen's own management acknowledge that it is not accounting for payments correctly, particularly when the borrower is in bankruptcy, as the plaintiffs were. Therefore, Ocwen's counsel claim that plaintiffs have not provided interrogatory responses to specific payment application is due solely and entirely to Ocwen.
>
> While the plaintiffs cannot know for certain how Ocwen made these errors, Nationstar reports that the loan information from Ocwen indicates that the plaintiffs were at least $8332 delinquent when it began servicing the loan. Compare WOOD000246 with plaintiffs' accounting. See also e.g. WOOD000150. Therefore, plaintiffs can only assume that since they are current, that Ocwen kept at least $8332 for its own benefit and did not apply the money toward the loan properly.

Response (doc. 55) at pp. 3-5.[1]

Plaintiffs appear to acknowledge they do not know the facts to support their claim and do not

---

[1] While plaintiffs refer to their "accounting," it is merely a list of purported payments from July 3, 2013 through August 2, 2017, without any authenticated documents demonstrating either the payments or receipts. See Ex. A attached to Response (doc. 55). It is also unclear how plaintiffs arrived at the $8332 figure from document WOOD000246 (appears to show a total delinquency of $6007.11 as of February 11, 2016) or from document WOOD000150 (shows that a payment of $6271.75 is due on January 1, 2017 to bring account current for missed payments from August 1, 2016 to December 1, 2016). See Attached Documents. The documents are insufficient to show why plaintiffs cannot answer the interrogatories. Indeed, the documents appear to identify the August through December 2016 payments as misapplied and the $6271.75 due on January 1, 2017 as an incorrect attempt to collect assuming the correctness of plaintiffs' "accounting" showing the payments were in fact made in those months and every month before. However, if these are the misapplied payments, they occurred after Ocwen stopped servicing the loan in November 2015 and Nationstar took over. Document WOOD246 also appears to show missed payments going back to April or May 2015 with two November 2015 payments applied to May 2015 (but going into a suspense account) and June 2015, but plaintiffs do not state why they can't identify any misapplied payments in those months either.

Page 3 - ORDER

identify the purported payment reversals in their response to the interrogatories. In addition, plaintiffs do not provide their own corresponding admissible records to show that the payments were indeed made and not reversed back to them or into their escrow account.

The interrogatory responses related to improper collection, improper fees, improper reports, defamation, and UTPA violations similarly rely on the presumption plaintiffs' loan is current, which as noted, is neither adequately explained nor supported.

With respect to the interrogatory regarding plaintiffs' qualified written request to support their RESPA claim, plaintiffs merely assert they are not in possession of their QWR and thus fail to identify the document.

As noted in the show cause order, a more drastic sanction may be necessary in light of the futility of the court's previous attempts to ensure plaintiffs' compliance with their discovery obligations. Plaintiffs' response to the show cause order fails to alleviate this futility or demonstrate adequate compliance. Accordingly, plaintiffs are precluded from providing testimony on the issues raised in the interrogatories identified in the show cause order.

## CONCLUSION

Plaintiffs are precluded from providing testimony on the issues raised in the interrogatories identified in the show cause order (doc. 54).

DATED this 13th day of July 2018.

s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge